May it please the court, Christopher Matteroli on behalf of the appellant Michael Riley. On behalf of the appellant, we ask that you vacate the sole conviction in this case on account two of the indictment and remand this back to the district court. For the two and a half years that this case had been investigated and prosecuted, the government's theory, its investigation, its proof at trial, was all about obstruction of an FBI investigation, not a grand jury proceeding. And even though the district court gave the government the benefit of the doubt at the motion of the dismiss stage that the government was going to proceed a trial on obstruction of an official proceeding, because as the district court said at the pre-trial conference, this is what you charged, correct? The government said yes. The government had its opening statement where it discussed yet again its belief that Michael Riley obstructed an FBI investigation. I objected. At the end of the government's opening, the district court agreed that it would give a curative instruction to the jury that Officer Riley had not been charged with obstruction of an FBI investigation. But that did not stop. It proceeded throughout the entire case with its witnesses, even in advance of sentencing. Would you say that the fact that Riley saw House Post and then didn't even assist in the investigation with respect to turning that in, that that could have been obstruction itself too? Not of a grand jury proceeding, especially when this is a public Facebook post. But is the obstruction just the grand jury proceeding or obstruction with respect to the investigation as well? Well, on the day that it occurred, January 7th, there was no grand jury proceeding at that time. It did not even... I know, but I'm asking about the investigation, not just a grand jury proceeding. Assuming a grand jury had been opened up. But why do you have to have a grand jury to obstruct? Well, in this particular case, it would have to be foreseeable to Officer Riley on that date that there would be a grand jury inquiring as to the specific item and that his actions actually obstructed that. That didn't occur and the jury didn't find that. Okay, but he's a Capitol Police officer. You have a riot, allegedly, occurring on the 6th. Is it not foreseeable that there is going to be some potential criminal and prosecution or investigation arising out of those alleged events on that day? Absolutely. That is reasonable that there's going to be an investigation. But what did Officer Riley know at that time? Well, there's a Facebook post where an individual claims to have fallen in, been pushed, immediately complied with law enforcement. At a minimum, that would be misdemeanor trespassing. As every Capitol Police officer who testified for the defense said, never dealt with a grand jury, never dealt with a grand jury proceeding irrelevant to that. How about Riley posting himself, I believe, on January 7th that everybody might be federally charged? Yes, that everybody could be charged and he, very similar to an officer, saying, you know, don't speak anymore or, hey, it's time for you to leave here, you're going to be arrested if you don't leave. Or telling someone, don't drink and drive, they're going to be posting of law enforcement officers at the end of the turnpike. All of that was indicating to Riley, I should say to Hiles, who provided a statement to the defense that he didn't think that he was being obstructed. He just thought that he was trying to, you know, don't make it worse for yourself. And at this time, Officer Riley knows that there are numerous cameras inside of the Capitol and outside. That if anything, if Mr. Hiles had entered and that there was video, that, you know, more or less, you know, he would be brought to justice. And Officer Riley knew that two separate individuals, two separate individuals that he personally knew had reported Hiles to law enforcement. Separate and apart from a Facebook post that was at the time Officer Riley contacted Mr. Hiles, had been viewed by 700 people, had been reposted, and we learned mid-trial from a witness that the government didn't even want the defense to be able to call in its case in chief, Special Agent Nielsen, that the FBI had this Facebook post in its possession and a screenshot had actually occurred before Officer Riley even made contact with Mr. Hiles. So is your point in this regard that the existence of other avenues by which Hiles' conduct on January 6th might have become known to the government and the investigation of the defendant and jury undermines any possible intent or knowledge on Mr. Riley's part? Absolutely, Your Honor. That's the point there. That's the point. This is not a single document or a piece of evidence that's thrown in a river. This is a social media post that's everywhere. It's spreading like wildfire. By the time Riley, on the 7th, even makes contact, it has been reposted 700 times. But that seems like that's a factual question. Is that not a jury, an issue that you've argued or the, you know, counsel argued to the jury and the jury made a finding? Oh, the district court actually prevented the defense from presenting all the evidence regarding this being socially available, how many times that people have been prosecuted for felonies, all this additional evidence that would undermine the ability of the defense to argue this was not, you know, throwing the gun into the river or making evidence unavailable. This was, you know, completely, you know, public information. Multiple people have reported this to Officer Riley himself, direct knowledge. As to count two, the only conviction, I'm sorry. Well, that's what I was going to ask you about. Wasn't the most relevant evidence for the actual count of conviction that he deleted his private messages with Hiles on January 20th? I mean, I'm more curious in your arguments about that evidence. Absolutely. And thank you for directing me to that issue. First and foremost, it is not clear even still today what grand jury the government was proceeding on a trial. The defense always thought this was obstruction of the grand jury charged in the indictment, which I have a copy of relating to the breach of the capital on January 6th. At the motion to dismiss, I should say the motion for acquittal stage, mid-trial, the district court says to the government, is this really what you're arguing? Where's the effect? I always thought this was to protect Officer Riley, not to obstruct the investigation as to Mr. Hiles. The government needed a break, so went back to the council table and said, well, we're going to argue both. That it was obstruction of a grand jury relating to January 6th and Jacob Hiles and simply a grand jury that would potentially be investigating Officer Riley. If the grand jury just needs to be reasonably foreseeable, why does it matter which grand jury ultimately indicted him? In other words, isn't the only question whether a jury could find that when he deleted all these posts, it was reasonably foreseeable to him that a grand jury would be investigating a grand jury and a grand jury would be investigating the January 6th events? Two points to that, Judge Garcia. Number one is the Supreme Court said particular. So they've used that phrase, particular grand jury. That's not a defense argument. And two, the language of the Supreme Court president is have an effect. Officer Riley's conduct would have had to have an effect on that grand jury. At the time he deleted his Facebook direct messages, Mr. Hiles had indicated to Officer Riley in writing, I had been charged with misdemeanors for trespassing. I had already spoken to the FBI. They have, they've downloaded my phone. They have everything. What does Officer Riley do, supposedly wanting to remove this from the purview of the grand jury, some grand jury? He goes and tells another Capitol Police officer, Vincent Lengamby, on the exact same day that he not only talked to Mr. Hiles, but direct quote, I told him to take that shit down. That's what he said on the day he's alleged to be removing from the purview of a grand jury investigating him relating to obstruction. So I think the government's response on the fact that Hiles' phone had already been captured is that there's no evidence one way or the other about whether Riley knew whether Hiles had kept all these direct messages on his phone. In other words, Riley still could have thought he was accomplishing something by taking the material off his own phone. What's your response to that? Well, again, the government's arguments shifted throughout the case. In the indictment, they alleged that the obstructive act was the initial Facebook post, take down that portion, right? At that point, Hiles had been completely arrested. The information, Officer Riley knew that multiple people had reported Hiles, that it was publicly available. So there was nothing to indicate that Officer Riley believed that he obstructed anything at that time, especially a grand jury. And that's exactly what he said to law enforcement when they came to his house. Obstruction? They asked him, obstruction? And what did the agents say in the interview, which again, the district court did not want to have anything presented to the jury on this issue, said, oh, I don't know, 1505, 1512, you know, maybe you should have, why didn't you tell us about this? 1505 is obstruction of an agency investigation. It's exactly what they put in their search warrants. It's exactly what they argued throughout the entire case. Only when they realized that there was no agency, there was no official proceeding on the 7th, they switched gears to a 1512 obstruction of an official proceeding. But their arguments, their search warrants, their evidence was all towards obstruction of an investigation. And it does matter, Judge Garcia, that the defense know what is, in order to adequately defend itself, what is the official proceeding that the jury is going to be instructed upon. They were instructed upon an official proceeding related to the breach of the United States Capitol. Mid-trial, mid-trial, the district court is telling the government, basically, I think this is the better argument. Is this really what you're arguing? And the government said, oh, yes, absolutely, this is what we're arguing. And we now pivot towards a trial as to protecting Officer Riley for misdemeanor conduct with a law enforcement officer who has been there for 25 years and has dealt with multiple protests and arresting individuals, never appeared for a grand jury. The entire record of this case of other law enforcement officers who testified for the defense, which the government omits completely from its brief, is that they never appeared for a grand jury proceeding relating to these misdemeanor offenses. Your Honors, I believe I'm out of time, but I would ask for a little brief rebuttal. We'll give you some rebuttal time. Thank you. Thank you, Mr. Macchiaroli. May it please the Court. Mark Hobel for the United States. I'd like to focus on count two, the count of conviction and the sufficiency of the evidence supporting the nexus between the obstructive act in this case, which was deleting hundreds of private direct messages with a January 6th rioter and the official proceeding, which was the January 6th grand jury investigation. A reasonable jury... You labeled it as grand jury investigation, not grand jury proceeding. Is there a reason you're framing it that way? No. We used grand jury proceeding in the book to mesh with the statute, but I'll be using it interchangeably, but thank you. With respect to the nexus here, well, there's two components to the nexus. The first is that the official proceeding be reasonably, at least reasonably foreseeable to the defendant at the time of the obstructive acts. And the second component is that the obstructive acts have the natural and probable consequence of interfering with that proceeding. So in terms of reasonable foreseeability, Riley's own direct messages easily satisfy any sufficiency requirement. A reasonable jury could surely infer at the very least the January 6th grand jury investigation was reasonably foreseeable to him. As early as January 7th, he was posting publicly on Facebook, every protester that assaulted an officer yesterday committed property damage and broke into the Capitol building should be charged federally in district court. But then he later told Hiles in a direct private direct message, take down the part about being in the building. They are currently investigating and everyone who is in the building is going to be charged. On January 16th, he told Hiles, they're arresting dozens of people a day. Everyone that was in the building engaged in violent acts or destruction of property and they're all being charged federally with felonies. January 20th, after Hiles had told him he'd been arrested, Riley said to another person, Ben Shepard, I thought everyone was getting charged with felonies. And Riley admitted in his grand jury testimony that he knew that grand jury had to charge felonies. So the grand jury proceeding was clearly reasonably foreseeable to him at the very least. In terms of the nexus and the natural and probable consequence, at the time he deleted the messages, he knew that Hiles had just been arrested. He knew that the FBI was very interested in him. Riley, and he knew also because he told Hiles that the FBI was going through everything to help determine who was going to get charged. And one thing I want to really emphasize here that perhaps we didn't emphasize in our brief, five days after he deleted the messages, at the very first sign of trouble in an OPR complaint, this is on January 25th, he told his union representative, he speculated to his union representative, and this is at, I am sorry, page 531 of the appendix. If I had to guess what the OPR complaint is, it's for telling that person I know to take down his stuff, and I'm paraphrasing some of the words there, from the Capitol breach. But I did it on private message, so it should be like a private conversation, but who knows? So he has that guilty conscience with respect to the obstructive act that was the subject of count one. And our principle theory here is that he deleted his messages in order to, in order to impede his availability to the grand jury investigation. Can I ask you about the first aspect of this? So the element is intent to impair availability in an official proceeding. And courts have said that a, in this case, a grand jury proceeding just needed to be reasonably foreseeable. So in the government's view, does it matter that a grand jury was actually ever impaneled at all, or does it just need to be reasonably foreseeable to him that a grand jury could have been impaneled? The latter. As a matter of sufficiency, we don't need to establish that a grand jury was actually impaneled. I mean, we did present that evidence at trial, so that's present here. But, you know, for sufficiency purposes, no. It just has to be reasonably foreseeable. And we've listed a number of cases in our brief from other circuits in which the pending law enforcement investigation does make a grand jury proceeding reasonably foreseeable, including this Court's precedent in the United States v. Kelly. But that's just for the state of mind. I mean, you wouldn't be obstructing or interfering if there weren't eventually an actual grand jury? I know, although I don't know that I can think of a case off the top of my head in which there wasn't an actual proceeding. But that's no. An endeavor is sufficient. In fact, the statute says in Section 1512, I believe it's F, that no grand jury proceeding need be pending at the time. Again, a reasonable foreseeability, which does go to the state of mind. So unless there are any further questions, we would ask this Court to affirm Riley's conviction. Thank you. Thank you. Your Honor, there is absolutely nothing in the record to support count two of the indictment conviction that Officer Riley affected a grand jury by deleting his direct Facebook messages. All but one pertained to phishing, politics, life story, things of that. The one dealing with taking down a portion of the Facebook post. At that time, January 20th, Hiles had been arrested. Hiles had spoken to law enforcement. There was video of Hiles floating around on the Internet. Officer Riley knew two people had already reported Hiles. And even though the district court did not rule on the motion for judgment acquittal in the during trial, reserved it, two months later provided an extremely lengthy synopsis of why the motion for judgment acquittal should be denied. I looked that over tonight. I could not find any facts supporting the concept that Officer Riley altered or affected the grand jury by deleting his direct Facebook messages. And as to the issue of... Does that mean that you just believe that they could come from another source, that you just don't tie it to him? But by that time, it would not have made a difference. And moreover, Judge Childs, we don't know what the grand jury was investigating. And we still don't know that even today. And so are you making a materiality argument that it wasn't material? And so then even assuming that he had the purpose of hiding his communications with Hiles from a potential grand jury that was reasonably foreseeable, that it doesn't matter because it wouldn't have been material to the investigation? It would have had no effect. Is that your argument? That's a materiality defense? I think it's – I think I'm in the language of effect. Have – make a difference. That's how I interpret the term effect. The grand jury is not looking for Facebook messages between Officer Riley and Hiles, assuming that they even had an investigation for misdemeanor offenses, as Hiles and 200 other January 6th defendants at that time were charged by information, not subject to a grand jury in proceeding whatsoever. And the evidence in this case was Officer Riley was concerned about disciplinary action for talking to somebody relating to January 6th, not that he would be charged with obstruction of a grand jury proceeding by telling somebody who had a public Facebook post, take down a portion of your Facebook post about going into the Capitol. Leave everything else, that you were there, that the crowd pushed, everything, but just the portion of falling in, take that out. There was no evidence that that would be an attempt to obstruct that grand jury. And as to the issue, once again, of felony versus misdemeanor, the government in its own indictment at A19, paragraph 13E, alleges at the beginning of this investigation that Mr. Hiles was talking about learning from the – having spoken to the Capitol Police on the 16th, four days before the alleged obstruction, that his charges were likely to involve only trespassing. There was no belief amongst anybody, Hiles, Riley, that he was going to be charged for a felony for, you know, going in and trespassing consistent with what all the Capitol Police officers had testified and what Officer Riley had testified to as well. And I – and if I – just in the brief moments I have – Can I – we'll give you a little bit more time since I'm asking you a question, but you made a claim that there was Jenks material that wasn't provided, and I just wonder what is your basis for believing that the government did not provide all Jenks material? Well, I can give you a perfect example. Officer – Special Agent Nielsen, the one who actually interviewed Hiles, the one who actually had the Facebook post at issue and count one, the government moved to prevent the defense from calling that witness. When we learned during the trial, amongst many things like the government's theory, what was the – what was going to be the instruction to the jury, we learned that the Facebook post was received by the FBI arguably before Riley even – even made contact with Hiles. There was a report done by – by Officer Nielsen as to when he received this because he couldn't remember. I've never received that report. I've also not received any communications relating to any text messages between – or instant messages between the case agent and everyone else involved in the case. We moved – we had to move to compel to get Hiles' case file from the government, which was denied. Why would that make a difference? So this is a – the statute – the offense focuses on the state of mind of someone in – in Officer Riley's position. So whether his judgments were overly concerned or – or not or whether, you know, he would have done himself a service just to leave everything be isn't really the question, is it? I think it absolutely is. Is – did Officer Riley believe he was obstructing a grand jury proceeding by telling somebody on Facebook who was publicly posting videos and it's reposted 700 times by the time he reaches contact that he's – that he could potentially be removing evidence from the purview of a grand jury? Absolutely. We should have every right as defense to say, no, this was posted all over. There was preservation requests issued by the FBI, you know, that there are cameras everywhere. All that would show that that wasn't his intent to undermine a grand jury or remove evidence. So the argument is on this record that it's so abundantly clear that Officer Riley could not have been motivated by an intent to deprive the grand jury of additional evidence, in your view, highly cumulative evidence that – that it's unsupported by the evidence that no reasonable jury could find that he had a motive to keep his own name out of the grand jury. Yes. I would completely agree with that statement, 100 percent. And, Your Honors, in the very brief moments, and I appreciate the time that you've given me on behalf of Officer Proceeding, the case agent who testified – and the government relies upon this in their appellate brief – that individual had no personal knowledge whatsoever. Testified as to – he was the – the chief law enforcement officer for January 6th cases. A cross-examination – and this isn't great cross-examination by me. This is kind of basic questions. You know, when was – when did you go into the grand jury? And I was thinking, oh, I went in January 10th or something. October. Well, how do you know about this grand jury if you went in October? Well, I – I never went in. I never heard anything. And even the district court said to the government, stop. This witness has no personal knowledge whatsoever. No more questions on this topic. And you have to get me something so I could take judicial notice. Well, judicial notice at the end of the government's order of proof is highly prejudicial to defense, especially when it's relying upon – On appeal, you haven't challenged the judicial notice directly, have you? Oh, absolutely. Absolutely. I think it's completely preserved that it was error for – and, you know, I make an argument at the end of our opening brief. In 20-plus years of practicing as a lawyer, I've never asked for disqualification of a judge. And even when I was at the Department of Justice for 10 years, I made that request to this court because I believe taking judicial notice to arguably save the government's case when it has a witness with no possible – no over what is appropriate conduct. And I only do that with strong hesitation. So I absolutely believe that that has been preserved, that taking of judicial notice. And moreover, Your Honors, based on a document – based on a document as to what the initial grand jury was convened for, that defense has still not seen, that we requested in a motion to compel as to what this document was that set up this grand jury. And I would speculate, pure speculation, that there's nothing in that document about the scope of the grand jury. It was about getting jurors to this building so that the government could start presenting cases and have them available. We don't know what the scope of the grand jury of January 6th was, if it was investigating people – assaulting officers, rioting, or was it also so broad on January 20th to encompass anybody who said anybody to anyone on the Internet, hey, maybe you shouldn't put that up there about January 6th. Maybe you should take that down. And I've had clients – But he qualifies it with saying you should take it down because people who are in the building may be charged with felonies. Absolutely. He's trying to – well, he says initially you're going to be charged. That's January 7th. He does use the word felonies on occasion. He talks about what we would normally think of felonies – assaulting people, destroying property, defacing property, threatening law enforcement. Mr. Hiles did none of that. And that was very clear. And that's why he was charged with – Mr. Mead is given a probationary sentence in this case, while Officer Riley, who was a veteran, saved two lives, was a training officer, can no longer carry a firearm and is a convicted felon. Thank you. We'll take the case under submission. Thank you, Your Honor.
judges: Pillard, Childs, Garcia